IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| World Cam, LLC, ) | C/A No. 8:19-cv-02066-DCC |
| )  | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Omnibond Systems, LLC, and Kenneth ) | |
| Boyd Slattery, ) | |
| ) | |
| Defendants and Third-Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| World Cam, LLC, and Andrew Slattery, ) | |
| ) | |
| Third-Party Defendants. ) | |
| _____ ) | |

This matter is before the Court on Defendants Omnibond Systems, LLC ("Omnibond") and Kenneth Boyd Wilson's ("Wilson") (collectively, "the Omnibond Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 59.  Plaintiff World Cam, LLC ("World Cam") filed a Response in Opposition, and the Omnibond Defendants filed a Reply.  ECF Nos. 63, 67.  For the reasons set forth herein, the Court grants Defendants' Motion.

## **BACKGROUND**

On August 6, 2010, Andrew Slattery formed World Cam to operate a proprietary business process he developed for quick oil change facilities.  ECF No. 58 ¶ 7. The proprietary business model involves the use of cameras, equipment, cabling, software, technology and services to track, record, monitor, measure, schedule, improve, and expedite wait times, dwell times, service times, service performance, and other aspects

1

of the quick oil change business (the "Proprietary Business Process"). *Id.* ¶ 8. World Cam sought to combine its camera and technology capabilities to track the amount of time a vehicle spent in a service bay and use this data to improve customer transparency and promote employee efficiency. *Id*. After several years of research and development, World Cam directly presented to Valvoline, LLC and Valvoline Instant Oil Change Franchising, Inc. (collectively "Valvoline"), its now-patented Proprietary Business Process and subsequently negotiated its roll out. *Id.* ¶¶ 9, 11, 74. Thereafter, in April 2017, Valvoline and World Cam entered into a contract ("the Valvoline Agreement") whereby World Cam agreed to supply a turn-key, full-service version of the Proprietary Business Process tailored for Valvoline (the "Valvoline Complete Solution"). *Id.* ¶¶ 6, 12. The Valvoline Agreement provided for an initial term of five years. *Id.* ¶ 13.

To implement portions of the Valvoline Complete Solution, World Cam required corresponding software code to track vehicles as they moved through a service bay. *Id.* ¶ 15. World Cam ultimately selected Omnibond's proprietary BayTracker software for installation into computers and resale to Valvoline corporate stores and franchisee-owned stores. *Id.* ¶ 19. World Cam and Omnibond executed the Reseller Agreement on or around May 22, 2017. *Id.* ¶ 38. The Reseller Agreement provided for a one-year initial term with either party maintaining the right to terminate the Agreement without cause upon 180 days' written notice. *Id.* ¶ 29. On January 24, 2019, Omnibond submitted to World Cam its Notice of Termination of the Reseller Agreement. *Id.* ¶ 57. The Notice of Termination resulted in an effective termination date of July 23, 2019. *Id.*

World Cam initiated this action on July 23, 2019. ECF No. 1. The Omnibond Defendants filed a Motion to Dismiss on September 6, 2019, which was fully briefed. ECF Nos. 9, 30, 36. Also on September 6, 2019, Omnibond filed a Motion for Preliminary Injunction, which was fully briefed. ECF Nos. 10, 24, 26. On October 7, 2019, World Cam filed a Motion for Preliminary Injunction. ECF No. 25. Omnibond filed a Response in Opposition, and World Cam filed a Reply. ECF Nos. 27, 31. On November 20, 2019, the Honorable Bruce H. Hendricks, United States District Judge for the District of South Carolina, issued an Order granting Omnibond's Motion for Preliminary Injunction and denying World Cam's Motion for Preliminary Injunction. ECF No. 39. Thereafter, World Cam filed a Notice of Appeal. ECF No. 40.

On January 10, 2020, this action was reassigned to the undersigned. ECF No. 44. On June 22, 2020, the undersigned conducted a hearing on the Motion to Dismiss. ECF No. 50. Subsequently, World Cam filed a Motion for Leave to File an Amended Complaint. ECF No. 52. The Omnibond Defendants filed a Response in Opposition, and World Cam filed a Reply. ECF Nos. 53, 54. On September 23, 2020, the Court granted the Motion and on October 2, 2020, World Cam filed an Amended Complaint. ECF Nos. 56, 58. Upon the filing of the Amended Complaint, the Motion to Dismiss was terminated as moot. The Omnibond Defendants filed a second Motion to Dismiss on October 16, 2020; World Cam filed a Response in Opposition, and the Omnibond Defendants filed a Reply. ECF Nos. 59, 63, 67. On November 19, 2020, the Court issued an Order staying ruling on the Motion to Dismiss. ECF No. 69. On June 21, 2021, the Fourth Circuit issued

a Mandate and Order dismissing the Notice of Appeal.  ECF No. 74.  On July 7, 2021, the undersigned lifted the stay based on the voluntary dismissal of the appeal.  ECF No. 78.

## APPLICABLE LAW

*Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . .  Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted).  In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  However, while the Court must accept the facts in a light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint has "facial

4

plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ANALYSIS

### *Breach of Contract*

World Cam brings a breach of contract claim against Omnibond. World Cam contends that the Reseller Agreement is open to different interpretations; therefore, the Court cannot dismiss the Amended Complaint at this procedural posture. ECF No. 63 at 9–13. World Cam's breach of contract claim rises and falls based on whether the language of § 9.2(d) of the Reseller Agreement is unambiguous.[1] It is undisputed that Omnibond was within its rights to terminate the Reseller Agreement and that it did so pursuant to the contractually specified procedure, resulting in an effective termination date of July 23, 2019. ECF Nos. 59-1 at 11–12; 63 at 5. However, World Cam argues that under § 9.2(d), the "existing agreement" that Omnibond promised to honor post termination is the Valvoline Agreement. World Cam contends:

> From inception, the Valvoline Agreement and Reseller Agreement contemplated the inclusion of all Stores, even those added "after the Effective Date" of the Valvoline Agreement. Indeed, there is no "new agreement" or "purchase order" with each Store as it is brought online with

---

[1] The Amended Complaint incorporates the Reseller Agreement by reference; therefore, this Court may look to the actual language of the Agreement as well as the allegations in the Amended Complaint. *See Forgus v. Mattis*, 753 F. App'x 150, 153 (4th Cir. 2018) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes" (quoting Fed. R. Civ. Pro. 10(c))); *Brave Mar. Corp., Inc. v. Glob. Mktg. Sys., Inc.*, 661 F. App'x 249, 251 (4th Cir. 2016) ("In the event of conflict between the bare allegations of the complaint and any exhibit attached to the complaint, the exhibit prevails.").

5

> the Valvoline Complete Solution. Rather, the Stores are brought online pursuant to the terms of the Valvoline Agreement with Valvoline making a single payment reflective of the number of Stores utilizing the Valvoline Complete Solution.

ECF No. 63 at 10–11 (citations omitted).

Omnibond argues that World Cam has failed to allege sufficient facts in support of its breach of contract claim. ECF No. 59-1 at 17–21. Omnibond asserts that the Reseller Agreement is unambiguous and, under its terms, there was no breach. *Id.*

South Carolina law governs the interpretation of the Reseller Agreement. *See id.* § 15.2. Under South Carolina law, "[t]he elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009) (citing *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (1962)). "'Contract interpretation begins with the plain language of the agreement.'" *Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 756 S.E.2d 148, 152 (2014) (quoting *Gould Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Ashley River Properties I, LLC v. Ashley River Properties II, LLC*, 648 S.E.2d 295, 299 (S.C. Ct. App. 2007) (citation omitted). "If the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *Id.* Moreover, "[w]hen a contract is unambiguous, a court must construe its provisions according to the terms the parties used as understood in their plain, ordinary, and popular sense." *Id.* (citing *C.A.N. Enter., Inc. v. S.C. Health Human Servs. Fin. Comm'n*, 373 S.E.2d 584, 586 (1988)).

It appears that the Valvoline Agreement contemplated all corporate and franchisee-owned stores eventually becoming participants in World Cam's proprietary business process over time. However, Omnibond is not a party to the Valvoline Agreement. The only relevant agreement between Omnibond and World Cam is the Reseller Agreement. World Cam and Omnibond agreed that either party could terminate that contract "at any time, without cause, with 180 days advance written notice." ECF No. 58-1 § 8. World Cam's reading of § 9.2(d) of the Reseller Agreement—which would allow World Cam to distribute the BayTracker software to new end users (i.e., new Valvoline locations) after the termination of the Reseller Agreement—would theoretically require Omnibond to begin servicing new Valvoline end users under World Cam's "existing agreement" with Valvoline in perpetuity.

However, this reading of § 9.2(d) is inconsistent with other sections of the Reseller Agreement. For example, § 9.2(a) allows Omnibond, upon termination of the Agreement, to "terminate any or all unfilled orders." Under World Cam's interpretation of the Reseller Agreement, Omnibond would be required to fulfill all Valvoline orders for the duration of World Cam's relationship with Valvoline. Moreover, § 8 gives Omnibond the right to terminate the Agreement. World Cam's reading would require Omnibond to continue to permit World Cam to sell and distribute Omnibond products and services to the entire "Territory" (as defined in § 1.1 of the Reseller Agreement) for the life of the Valvoline Agreement, the duration of which Omnibond has no control over because it is not a contracting party. To credit such a reading of § 9.2(d) would be to contravene a fundamental tenet of contract interpretation: "[A]n interpretation that gives meaning to all

7

parts of the contract is preferable to one which renders provisions in the contract meaningless or superfluous." *Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 756 S.E.2d 148, 153 (2014) (quotation marks and citation omitted); *see also Williams v. Unum Grp. (Corp.)*, No. 3:17-CV-01814-CMC, 2017 WL 10756823, at *5 (D.S.C. Oct. 18, 2017) ("'All contracts should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or results.'" (quoting *Bruce v. Blalock*, 127 S.E.2d 439, 442 (S.C. 1962))).

Ultimately, the Court agrees with Omnibond that "the terms 'existing agreements' and 'end users' clearly refer to Valvoline Corporate Stores and Franchises that had purchased Omnibond Products and Services through World Cam prior to the termination of the Reseller Agreement."[2]  ECF No. 59-1 at 19.  As there is no allegation that Omnibond has breached its continued duties to these entities, World Cam's breach of contract claim fails and is, accordingly, dismissed.[3]

---

[2] The Court finds World Cam's argument that "there is no 'new agreement' or 'purchase order' with each Store as it is brought online with the Valvoline Complete Solution" to be unpersuasive.  *See* ECF No. 63 at 10.  To the extent World Cam argues that this fact supports its argument that the term "end user" should be defined more broadly, such argument is undercut by the fact that Valvoline only paid for Stores that had been brought online.  *See id.* at 10–11 ("[T]he Stores are brought online pursuant to the terms of the Valvoline Agreement with Valvoline making a single payment reflective of the number of Stores utilizing the Valvoline Complete Solution.").  Moreover, such conduct cannot be construed as amending the Reseller Agreement because it specifically prohibits amendment or modification of its terms "unless reduced to writing and duly executed by the parties." ECF No. 58-1 § 15.8.

[3] As the Court has found that the Reseller Agreement is unambiguous, it need not consider World Cam's arguments that extrinsic evidence is admissible to determine the contract's meaning.  *See McWhite v. ACE Am. Ins. Co.*, 412 F. App'x 584, 587 (4th Cir.

*Tortious Interference with Contract*

World Cam brings a claim for tortious interference with a contract against Omnibond and Wilson for alleged wrongful interference with the Valvoline Agreement. The Omnibond Defendants argue that World Cam fails to state a plausible claim of tortious interference with a contract because there has been no breach of the Valvoline Agreement, World Cam has failed to allege facts supporting the claim that the Omnibond Defendants' actions lack justification, and World Cam has not and cannot allege any "resulting damage" because there has been no breach of the Valvoline Agreement. ECF No. 9-1. World Cam argues that it has clearly alleged each element necessary to state a claim for tortious interference with a contract. ECF No. 63 at 14. Upon review, the Court finds this claim is subject to dismissal.

Under South Carolina law, a viable claim for tortious interference with contractual relations requires proof of (1) the existence of a contract, (2) the alleged wrongdoer's knowledge of the contract, (3) an intentional and unjustified interference resulting in a breach of the contract, and (4) resulting damages. *Eldeco, Inc. v. Charleston Cnty. Sch. Dist.*, 642 S.E.2d 726, 731 (S.C. 2007). Generally, where there is no evidence suggesting that the actions of the purported tortfeasor were motivated by anything other than a pursuit or fulfillment of his own contractual rights with a third party, there can be no finding of

---

2011) ("'If the vital terms of a contract are ambiguous, then, in an effort to determine the intent of the parties, the court may consider probative, extrinsic evidence.'" (quoting *Dixon v. Dixon,* 608 S.E.2d 849, 852 (2005))).

9

intentional interference with contractual relations. *See Southern Contracting v. Brown Constr. Co.*, 450 S.E.2d 602, 604–06 (S.C. Ct. App.1994).

The Court finds that World Cam has failed to sufficiently allege that the Omnibond Defendants lacked justification for their actions. World Cam alleges that Omnibond attempted to "steal all of the revenue otherwise payable to World Cam and remove World Cam so that Omnibond could extract higher prices from Valvoline and the other franchisees for the Omnibond Products and Services" and that Omnibond, through Wilson, "sought to strip World Cam of the rights and financial benefits to which World Cam is entitled under the Valvoline Agreement." *See* ECF No. 58 ¶¶ 55, 56. However, World Cam has not sufficiently alleged that these actions were undertaken for an improper purpose or through improper means. *See BDC LLC v. BMW Mfg. Co. LLC,* 360 F. App'x 428, 435 (4th Cir. 2010) ("Absence of justification means conduct that is carried out for an improper purpose, such as malice or spite, or through improper means, such as violence or intimidation."). "A party is justified, however, when acting in the advancement of its legitimate business interests or legal rights." *Id.*

Indeed, viewing the facts in the light most favorable to World Cam, the Court finds there is no basis for finding that Omnibond was motivated by anything "other than the proper pursuit of its own contractual rights with a third party.'" *Johns v. Amtrust Underwriters, Inc.*, 996 F.Supp.2d 413, 421 (D.S.C. Jan. 27, 2014) (quoting *Eldeco, Inc.*, 642 S.E.2d at 732))"; *see also E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (holding that while a court must accept the facts in a light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences,

unreasonable conclusions, or arguments"). In a free enterprise system, this is called competition. Accordingly, this claim is dismissed.

***Fraud***

World Cam alleges that Omnibond and Wilson engaged in fraud by sending a letter on February 8, 2019, to World Cam representing that Omnibond would continue to fulfill its obligations under the Reseller Agreement. The Omnibond Defendants assert that there was nothing false or misleading about the letter let alone fraudulent. ECF No. 59-1 at 29. The Court agrees with the Omnibond Defendants.

To properly plead fraud under South Carolina law, a plaintiff must allege the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444–45 (S.C. Ct. App. 2003).

Fraud claims must be pled with particularity under Federal Rule of Civil Procedure 9(b). That means a plaintiff must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Edmonson v. Eagle National Bank*, 922 F.3d 535, 553 (4th Cir. 2019).

World Cam alleges the February 8, 2019, letter from Omnibond's counsel was fraudulent because Omnibond did not intend to continue honoring its obligations under

the Reseller Agreement. To the extent World Cam's claim is based upon its interpretation of the Reseller Agreement and its argument that the Agreement was breached, as explained above, the Court finds that Omnibond did not breach the Reseller Agreement. To the extent World Cam's argument is based on its allegations of improper interference with its contract with Valvoline, this claim has also been dismissed. Beyond this, there is no allegation that Omnibond has failed to fulfill its obligations to the end users that existed as of the termination date. Consequently, as there has been no wrongful action by the Omnibond Defendants, there can be no fraud in stating that Omnibond intended to "meet its obligations under the Agreement, including those that survive termination." ECF No. 58-6 at 3. Because the statement was not false at the time it was made, World Cam's claim for fraud must fail.[4]

***South Carolina Unfair Trade Practices Act***

World Cam alleges that Omnibond and Wilson violated the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-20(a). The Omnibond Defendants argue that World Cam has failed to sufficiently allege any of the three elements necessary to state a claim under SCUTPA. ECF No. 59 at 32–34. The Court agrees.

---

[4] The claim for fraud was brought as to both Defendants; World Cam alleges that "Defendants sent World Cam its February 8, 2019 letter in the hopes that World Cam would not suspect Defendants intended to contract with Valvoline directly and to induce World Cam to act in reliance on Defendants' assurances that it would continue to meet its obligations under the Reseller Agreement." The Court notes that Wilson did not sign the letter and is not mentioned in the letter. *See* ECF No. 58-6. Regardless, as explained above, the claim fails as to both Defendants.

To state a claim under SCUTPA, a plaintiff must allege "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *RFT Mgmt. Co., LLC v. Tinsley & Adams, LLP*, 732 S.E.2d 166, 174 (S.C. 2012) (internal citation and quotation marks omitted). "A trade practice is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive; a practice is 'deceptive' when it has a tendency to deceive." *Kirby v. Red Bull N. Am., Inc.*, C/A No. 3:19-cv-2701-CMC, 2020 WL 509139, at *3 (D.S.C. Jan. 31, 2020) (citation omitted).

With respect to the requirement that the defendant engaged in an unfair or deceptive act, the Court has previously discussed that Omnibond did not breach its contract with World Cam, and the Omnibond Defendants did not engage in fraud. Thus, without more, World Cam fails to allege sufficient facts that the Omnibond Defendants engaged in "a practice which is offensive to public policy or which is immoral, unethical, or oppressive." *deBondt v. Carlton Motorcars, Inc.,* 536 S.E.2d 399, 407 (S.C. Ct. App. 2000) (defining an unfair trade practice); *see also Key Co. v. Fameco Distribs., Inc.*, 357 S.E.2d 476, 478 (S.C. Ct. App. 1987) (intentional breach of contract, "without more, does not constitute a violation of the [SC]UTPA").

As to the public policy prong, World Cam alleges that the Omnibond Defendants' conduct is capable of repetition because Omnibond continues to exist as a South Carolina limited liability company. ECF No. 63 at 25. World Cam also argues that "it is axiomatic" that their actions affected the citizens of South Carolina because their breach of the

13

contract would impact Valvoline's ability to provide oil change time estimates to its customers. *Id.* These allegations are insufficient. The mere fact that an entity continues to exist does not support a claim under SCUTPA. *See Jefferies v. Phillips*, 451 S.E.2d 21, 24 (S.C. Ct. App. 1994) ("The mere proof that the actor is still alive and engaged in the same business is not sufficient to establish this element."). Moreover, World Cam's generalized allegation that citizens of South Carolina must have been harmed without any specifics is speculative at best. *See Carolina Cargo, Inc. v. Transportation Pers. Servs., Inc.,* C/A No. 0:15-cv-04629-JMC, 2016 WL 4506071, at *4 (D.S.C. Aug. 29, 2016) ("Absent specific facts, a plaintiff is merely offering a speculative claim about adverse public impact.").

Finally, World Cam's alleged damages arise from its breach of contract claim and not any unfair trade practice. *See Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 579 (D.S.C. 2003). Accordingly, this claim is subject to dismissal.

***North Carolina Unfair or Deceptive Trade Practices Act***

World Cam contends that Omnibond and Wilson violated the North Carolina Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, et. seq. To state a prima facie claim for unfair or deceptive trade practices under North Carolina law, "'a plaintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff.'" *Modern Auto. Network, LLC v. E. All. Ins. Co.*, 416 F. Supp. 3d 529, 547 (M.D.N.C. 2019) (quoting *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 747 S.E.2d 220, 226 (2013) (alteration in original) (citation omitted)).

As stated above, this claim fails because World Cam has not alleged sufficient facts in support of its argument that the Omnibond Defendants engaged in an unfair or deceptive act. World Cam argues that its "allegations are predicated on fraud and Omnibond's tortious interference with the World Cam-Valvoline contractual relationship." ECF No. 63 at 26. However, the Court has already ruled on these arguments and determined that World Cam failed to state such claims. Accordingly, this claim is dismissed.

### *Injunctive Relief*

The Omnibond Defendants assert that World Cam's request for injunctive relief must be dismissed as an improper cause of action. ECF No. 59 at 35–36. World Cam has not responded to the argument. Upon review, the Court agrees that any independent cause of action for injunctive relief should be denied. *See Indus. Packaging Supplies, Inc. v. Davidson*, C/A No. 6:18-cv-00651-TMC, 2018 WL 10456201, at *3 (D.S.C. June 22, 2018) ("Accordingly, because a stand alone count for injunctive relief is improper, the first cause of action for injunctive relief is dismissed . . . ."); *Augustson v. Bank of Am., N.A.*, 864 F. Supp. 2d 422, 439 (E.D.N.C. 2012) ("An injunction is a remedy rather than a stand-alone cause of action, and the court would consider the merits of awarding injunctive relief only if plaintiffs established Bank of America's liability under the HPA."). Therefore, to the extent World Cam intends to bring a claim for injunctive relief as a separate claim, it is dismissed as improper.

## **CONCLUSION**

Wherefore, based on the foregoing, Omnibond's Motion to Dismiss [59] is **GRANTED**.

IT IS SO ORDERED.

s/Donald C. Coggins, Jr.
United States District Judge

September 9, 2021
Spartanburg, South Carolina

16